### A97A1276. FLOURNOY v. BROWN.
(487 SE2d 683)

BIRDSONG, Presiding Judge.

This personal injury suit arises from injuries sustained in an automobile collision. The case was tried by jury, and a verdict was rendered in favor of appellant/plaintiff Celestine Flournoy in the amount of $14,892. Appellant appeals from the judgment entered on that verdict. Appellant's suit was predicated upon her claim that appellee Sarah Brown had failed to yield at an intersection or had run the intersection stop sign on Rigdon Road hitting primarily the left side of appellant's vehicle.

The evidence is in conflict as to the cause and circumstances of the collision. Appellee in essence testified that she stopped both at the stop line and beyond at a better vantage point, looked, observed no approaching traffic, entered the intersection, and was suddenly struck by appellant's automobile. She also testified, as hereinafter discussed, regarding the existence of a depression or hillside slope in the road 170 to 175 feet away which she contends blocked appellant's speeding vehicle from her view. Appellee introduced certain photographs to corroborate the existence of the depression. Appellant testified she was not speeding as she traveled down Baldwin Street and that her vehicle was struck by appellee who failed to yield the right of way at the intersection. She introduced the testimony of a neighborhood youth and the investigating police officer and certain photographs to corroborate her testimony. Appellant also testified that she slowed down as she approached the Rigdon Road intersection, as she almost had been hit there two days before. As she proceeded through the intersection, she saw something out of the corner of her eye and within half a second thereafter her car was hit on the front left side. Appellant enumerates five errors. *Held*:

1. Appellant enumerates that the trial court erred in giving the following charge: "When a driver of a vehicle at a stop sign has yielded the right of way to other vehicles approaching the intersection on a through street, which are so close as to constitute an immediate hazard, and then enters the intersection *when it is safe to do so*, he assumes the right of way at such intersection, and all other approaching vehicles on the through street are required to yield to the vehicle already in the intersection." (Emphasis supplied.) Appellant took exception to this charge on the grounds that it is not the law and that there exists no evidence to support the charge.

The above charge substantially mirrors the language of a predecessor statute pertaining to vehicles entering a through highway. See generally Code of Ga. (Unannotated) § 68-1652 (a), which pertinently stated, "but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right of way to the vehicle so proceeding into or across the through highway." Compare *Bowens v. State*, 116 Ga. App. 577 (158 SE2d 420). Section 68-1652 (b) (Ga. L. 1953, Nov. Sess., pp. 556, 590) also provided: "The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, *but may then proceed*." (Emphasis supplied.)

The Uniform Rules of the Road subsequently were enacted, and were intended, inter alia, to regulate stopping and to repeal conflicting laws. Ga. L. 1974, pp. 633, 657. The current statutory provision pertaining to stop signs and yield signs, OCGA § 40-6-72, pertinently provides: "(a) *Preferential* right of way may be indicated by stop signs or yield signs. . . . (b) Except when directed to proceed by a police officer, every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line or, if there is no stop line, before entering the crosswalk on the near side of the intersection, or, if there is no crosswalk, at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After stopping, the driver shall *yield* the right of way to any vehicle in the intersection or approaching on another roadway *so closely as to constitute an immediate hazard* during the time when such driver is moving across or within the intersection or junction of roadways." (Emphasis supplied.) We do not believe, however, that OCGA § 40-6-72 (b) had the effect of negating the prior law, as accurately reflected in the instruction here at issue. The plain and unambiguous language of this statute reveals that the legislature intended that preference of right of way would remain in the driver of a vehicle, being operated on a through street or highway, when such vehicle is in the intersection or is approaching the intersection under conditions which would constitute an immediate hazard to any vehicle attempting to enter the same intersection from a roadway controlled by a stop sign. Implicit within this language, however, is the legislature's continued intent that the driver of a vehicle, being operated on a roadway controlled by a stop sign, may momentarily gain preference of right of way when, after having come to a complete stop at the stop sign and having diligently looked for oncoming traffic enters *safely* into the intersection. Any other statu-

tory interpretation would lead to the absurd result that a driver legitimately stopped at a stop sign could never, under any circumstance, momentarily gain the right of way to cross the intersection. Statutory construction must square with common sense and reasoning. *Tuten v. City of Brunswick*, 262 Ga. 399, 404 (7) (a) (i) (418 SE2d 367). The instruction at issue was a correct statement of law.

We must now consider whether there existed any evidence, direct or circumstantial, to support the giving of this charge. See *Jenkins v. Burns*, 202 Ga. App. 579 (415 SE2d 30). Appellee testified that this was the first time she had been driving on Rigdon Road. She stopped at the stop sign, but because a bush and pole blocked her view, she moved ahead of the white stopping line to a point where she could see clearly and stopped again. From this vantage point she could see as far down the road as could be seen; she could see far enough so she felt "reasonably sure of entering with safety into the intersection." She looked both ways, saw no approaching vehicles, gradually accelerated into the intersection by "probably" two car lengths, and then, although there was no squealing of brakes or other noise to alert her, she saw appellant's vehicle coming toward her and knew she was going to be hit. She was traveling only five to ten mph at the point of impact; she does not believe she was going fifteen mph. Appellee further testified there is a hill or depression on Baldwin Street approximately 170 to 175 feet west of the intersection. (A depression in the road also appears in the photograph admitted as Defense Exhibit 3.) Appellant's vehicle hit hers; the point of impact was in the middle of the intersection or over the centerline. Appellee opined without objection that she did not see appellant's vehicle because appellant was going faster than the speed limit, as indicated by the effect of the impact which totaled two cars and flipped appellee's car onto a wall. Appellee likewise opined that appellant's car was beyond the flat point of the road and in the depression or hill slope when appellee started into the intersection. In response to a question from appellant's counsel, appellee testified that (although she had not seen appellant's vehicle before entering the intersection) appellant was going "every bit" of 40 or 50 mph. Appellee was "already there" in the intersection when, out of the corner of her eye, she saw appellant's vehicle approaching. Regarding the lay opinions expressed by appellee, all evidence is admitted as a matter of course unless a valid ground of objection is timely interposed. *Scott v. State*, 206 Ga. App. 23, 26 (1) (c) (424 SE2d 328). Appellee's testimony and photographic evidence sufficiently support the giving of the charge at issue. Compare *Bowens*, supra at 577 (1). " ' "To justify a charge on a given subject, it is not necessary there should be direct evidence going to that point; it is enough if there be something from which a legitimate process of reasoning can be carried on in respect to it." ' "

*Carter v. Central of Ga. R. Co.*, 149 Ga. App. 867 (256 SE2d 149). *Wilson v. City of Riverdale*, 203 Ga. App. 250 (416 SE2d 825), overruled on other grounds, *Brown v. City of Marietta*, 214 Ga. App. 840, 842 (449 SE2d 540), where no evidence of a depression or hill capable of masking the approach of a vehicle was considered and addressed, is distinguishable and not controlling. The issue whether appellee knew or should have known that appellant's vehicle was so close as to pose an immediate hazard was, under the attendant circumstances, a question of fact for jury determination. See *Bowens*, supra at 577 (1) (testimony authorized a finding that the appellant's vehicle was not so close as to constitute an immediate hazard). Appellant's first enumeration of error is without merit.

2. Appellant's second and third enumerations of error are without merit. Plaintiff contends there exists no evidence to support the giving of charges on the following theories: plaintiff's failure to exercise ordinary care to avoid the consequences of the defendant's negligence, last clear chance, failure to exercise care for one's own safety, comparative negligence, and negligence per se. In giving the latter charge the trial court stated that "both parties contend that the other violated certain laws or ordinances, stop sign violation and speeding. Such violation is called negligence per se, negligence as a matter of law. It is your duty to decide whether such violation took place or not." " ' "[A]n instruction is not abstract or inapplicable where there is any evidence, however slight, on which to predicate it." ' " (Citations omitted.) *Jenkins*, supra at 579. As above discussed, direct evidence is not required; it suffices if there exists any indirect (circumstantial) evidence from which a legitimate process of reasoning can be carried on in respect to the issue at hand. Id. There exists some evidence of record to support the giving of each of these charges. "Under the circumstances of this case, we must conclude that the issue of whether or not the appellant exercised due care upon approaching the intersection was for the jury, not the court, to determine; and we accordingly hold that the court did not err in charging on comparative negligence [and the other legal theories which appellant has enumerated as constituting charging errors]." *Stroud v. Woodruff*, 183 Ga. App. 628, 629 (1) (359 SE2d 680). See id. at 629 (2). Appellant asserts that the opinion testimony of appellee regarding her speeding and that the vehicle initially was shielded during a critical time of decision in a depression in the road should not be considered by this Court. As stated, this evidence was admitted without objection and therefore can be considered on appellate review. See *Scott*, supra. If appellant believed this evidence to be without probative value or otherwise inadmissible, a timely objection thereto should have been posed at trial. A party cannot during trial ignore what he thinks to be an injustice, hoping for an acceptable result,

and then after trial state his objections for the first time to the procedure followed or evidence admitted. See *Bruce v. State*, 259 Ga. 798 (2) (b) (387 SE2d 886). Likewise, "defense counsel may not take chances propounding questions which may elicit damaging answers[, i.e., questions such as, 'You think she was going, what, forty or fifty?'] and then demand reversal on appeal." *Hutson v. State*, 216 Ga. App. 100, 102 (5) (453 SE2d 130).

3. Appellant's fourth enumeration of error that the verdict was inadequate and contrary to the uncontradicted evidence is without merit. " 'When[, as in this case,] the rule concerning comparative negligence is involved in a case, the verdict of the jury cannot be set aside on the ground that the amount of the damages awarded is inadequate.' " (Citations omitted.) *Beal v. Braunecker*, 185 Ga. App. 429, 432 (3) (364 SE2d 308).

4. Appellant's fifth enumeration of error that the trial court erred in failing to grant a directed verdict on liability is without merit. The standard for the grant of a directed verdict is the same as that for judgment n.o.v., that is, "Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." *Pendley v. Pendley*, 251 Ga. 30 (1) (302 SE2d 554). In applying this test, this Court cannot weigh the evidence or determine witness credibility. See generally *Horney v. Lawrence*, 189 Ga. App. 376, 377 (3) (375 SE2d 629). The evidence was in conflict regarding the circumstances and cause of the collision; conflict in the evidence existed as to every material issue. Thus, the posture of the evidence did not demand a particular verdict. The trial court did not err in denying appellant's motion for directed verdict.

*Judgment affirmed. Ruffin and Eldridge, JJ., concur.*

DECIDED JUNE 17, 1997 — ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Before Judge Prather.

L. B. Kent, for appellant.

*Hatcher, Stubbs, Land, Hollis & Rothschild, William B. Hardegree*, for appellee.