JUDGE FOX
concurring in part and dissenting in part.
¶48 I endorse the majority's conclusion that the trial court did not err in dismissing two of plaintiffs' claims under C.R.C.P. 8 and 12(b)(5), or in directing a verdict for the County on the inverse condemnation claim. However, because I conclude that the trial court also did not err in entering a directed verdict on three of the four challenged acts in plaintiffs' section 1983 equal protection claim or in its instructions to the jury, I respectfully dissent.
I. Directed Verdict on Section 1988 Claim
¶ 49 The majority finds that there is no authority, under C.R.C. P 50 or anywhere else, authorizing a trial court to grant a partial directed verdict as to part of a claim. It thus concludes that the trial court erred in entering a directed verdict in favor of Summit County on three of the four allegedly discriminatory actions and remands plaintiffs' entire section 1983 claim for a jury to determine whether Summit County's actions constituted a pattern of discriminatory conduct against plaintiffs.
¶ 50 Because I conclude that (1) plaintiffs did not present evidence of similarly situated comparators for three of the four allegedly discriminatory actions and (2) neither C.R.C.P. 50 nor any Colorado case law prevents a trial court from granting a partial directed verdict as to discrete actions in a section 1983 claim, I would affirm the trial court's grant of a directed verdict as to three of the four acts of discrimination alleged in the section 1988 claim.
A. Equal Protection
¶ 51 In the proceedings before the jury, plaintiffs Rodgers and Hazel claimed, under 42 U.8.C. § 1983, that Summit County violated the Fourteenth Amendment to the U.S. Constitution by discriminating against them because of their sexual orientation and depriving them of equal protection under the laws. Seq, eg., Romer v. Evans, 517 U.S. 620, 635, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).
¶52 Equal protection "guarantees that all parties who are similarly situated receive like treatment by the law." Board of County Comm'rs v. Flickinger, 687 P.2d 975, 982 (Colo.1984) (quoting J.T. v. O'Rourke, 651 P.2d 407, 413 (Colo,1982)). To prove an equal protection claim, a plaintiff must first show that a government actor treated similarly situated individuals differently from the plaintiffs. [6] Id.; see also City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir.1998). When no issues of material fact exist, a trial court can determine, as a matter of law, that there are no similarly situated comparators. See, eg., Cruz v. Coach Stores, Inc., 202 F.3d 560, 568 (2d Cir.2000) (finding as a matter of law that plaintiff who engaged in a physical fight was not similarly situated to co-workers whose offensive behavior involved words only); Barney, 148 F.3d at 1312-13 (holding that female inmates did not present sufficient evidence of the treatment of male prisoners that were similarly situated); A.B. v. Adams-Arapahoe 28J Sch. Dist., 831 F.Supp.2d 1226, 1254 (D.Colo.2011) (granting summary judgment against plaintiff on her equal protection claims where she failed to show she was treated differently than someone similarly situated); Oldfield v. Village of Dansville, 769 F.Supp.2d 165, 172 (W.D.N.Y.2011) (holding that plaintiffs failed to show the existence of any similarly situated property owners); Dickens v. Interstate Brands Corp, 06-2868-STA, 2008 WL 2570864 (W.D.Tenn. June 25, 2008) (unpub *723 lished order granting summary judgment) (holding that male employee was not similarly situated to female employee because they held different positions and reported to different supervisors), aff'd, 884 Fed.Appx. 465 (6th Cir.2010); St. Cloud Police Relief Ass'n v. City of St. Cloud, 555 NW.2d 318, 322 (Minn.Ct.App.1996) (holding that as a matter of law, police and fire associations are not similarly situated).
B. Directed Verdiet Rule and Standard of Review
¶53 Rule 50, on directed verdicts, provides:
A party may move for a directed verdict at the close of the evidence offered by an opponent or at the close of all the evidence. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury. |
CRCP. 50. The rule, by its own terms, does not specify whether a verdict may be directed only against a elaim, a party, or an issue. As discussed below in section IC, absent such limitation, I agree with those courts that allow a directed verdict when, as a matter of law, a party cannot prevail on a claim or on part of a claim. - Price-Cornelison v. Brooks, 524 F.3d 1108, 1111 (10th Cir,2008); LRL Properties v. Portage Metro Hous. Auth., 55 F.3d 1097, 1106 (6th Cir.1995); Hamilton v. Henderson, 260 Ga.App. 132, 579 S.E.2d 58, 59 (2003); Hammond v. Salvation Army, 260122, 2006 WL 2271809 (Mich.Ct.App. Aug. 8, 2006) (unpublished per curiam opinion); In re Commitment of Scott, 09-11-00555-CV, 2012 WL 5289333 (Tex. App. Oct. 25, 2012) (unpublished memorandum opinion); see also Gordon v. Boyles, 9 P.3d 1106, 1113 n. 7 (Colo.2000) (reciting without deciding that the trial court entered a partial directed verdict on the "actual knowledge" element of a defamation claim). A complete lack of evidence on an essential element, like a comparator, allows a court to make such a legal determination, Paine, Webber, Jackson & Curtis Inc. v. Adams, 718 P.2d 508, 518 (Colo.1986) ("The . trial court should take an issue from the jury only in the absence of evidence upon which a jury could justifiably: determine the issue for the party opposing the directed verdict.").
¶ 54 We review a trial court's ruling on a motion for directed verdict de novo. Bonidy v. Vail Valley Cir. for Aesthetic Dentistry, P.C., 186 P.3d 80, 82 (Colo.App.2008). A motion for directed verdict should be granted only when any reasonable juror would conclude that no evidence or inference was presented at trial upon which a verdict against the moving party could be sustained. Thyssenkrupp Safway, Inc. v. Hyland Hills Parks & Recreation Dist., 271 P.3d 587, 590 (Colo.App.2011). We review the evidence in the light most favorable to plaintiffs, the nonmoving parties. Id.
C. - Similarly Situated Comparators
¶ 55 Plaintiffs' October 18,2011 trial management order (TMO) refined their claims, as the majority notes, to allege that the county's requirements were unreasonable and different from requirements imposed upon other county homeowners in similar cireumstances. The trial court later entered a directed verdict in favor of Summit County on three of the four challenged acts because plaintiffs did not present evidence that, even when taken in the light most favorable to them, could have established an equal protection claim. c
¶ 56 The majority does not address the issue of similarly situated comparators, and instead concludes that the jury must determine whether Summit County's actions, taken as a whole, constitute a pattern of discriminatory conduct.
¶ 57 The question of similarly situated comparators is a threshold question in any section 1983 claim, Flickinger, 687 P.2d at 982; see also Cleburne Living Cir., 478 U.S. at 489, 105 S.Ct. 8249; Barney, 148 F.3d at 1312, and plaintiffs did not present evidence *724 of similarly situated comparators for three of the four acts of discrimination in their section 1988 claim.
¶ 58 Summit County refused to grant a certificate of occupancy to plaintiffs because their septic tank was too small, they had not installed the required subsurface drain, and they had damaged wetlands on the property. According to plaintiffs, other property owners were granted certificates of occupaney despite having nonfunctioning septic systems. However, Summit County's manager of environmental health-who handled septic system issues-testified that no one was granted a certificate of occupancy with an undersized septic tank. Rather, one property owner with an undersized tank installed a new tank before the county issued a certificate. Another owner had a functioning septic system, and he only needed to complete the final grading and seeding of his property for erosion control. There, Summit County issued a certificate of occupancy and the county planned to verify that the grading and seeding were completed the following spring.
¶ 59 The record supports the trial court's conclusion that plaintiffs did not present evidence of similarly situated property owners. Plaintiffs failed to show anyone who installed an undersized septic system and was still granted a certificate of occupancy.
¶ 60 The trial court also found that plaintiffs failed to present evidence of anyone who disturbed wetlands on their property and was treated differently, by not being required to mitigate or not being required to post a bond for the mitigation work. While several Summit County employees testified that it was not typical for Summit County to get involved with wetlands mitigation or to require bonds for wetlands mitigation before issuing a certificate of occupancy, plaintiffs failed to identify any property owner who damaged wetlands and was treated differently by Summit County. The erosion control measures required of the property owner who plaintiffs claimed was similarly situated were not like plaintiffs' wetlands issues. ,
¶ 61 Because the question of similarly situated comparators is a threshold question in any section 1983 claim, PHekinger, 687 P.2d at 982; see Cleburne Living Cir., 473 U.S. at 489, 105 S.Ct. 8249; Barney, 148 F.3d at 1312, I conclude that the trial court properly determined that, as a matter of law, there was no evidence of similarly situated comparators for portions of plaintiffs' section 1983 claim related to the septic system requirements, the wetlands mitigation requirements, and the wetlands mitigation bond. Accordingly, the trial court was under no duty to allow the jury to decide those portions of the section 1983 claim. See Gordon, 9 P.8d at 1118 n. 7; Evans v. Webster, 832 P.2d 951, 954 (Colo.App.1991).
D. C.R.C.P 50
¶ 62 Plaintiffs contend, without supporting authority, that the trial court erred in analyzing Summit County's conduct as separate actions, rather than as a pattern of discriminatory conduct: <The majority accepts this argument.
¶ 63 I cannot accept that premise because, as in the summary judgment context, where the matter is one of law, courts can and should make the operative decision. See Anderson v. Liberty Lobby., Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 LEd,2d 202 (1986) (the standard for summary judgment mirrors the standard for a directed verdict); Evans, 882 P.2d at 954 (recognizing that if there is no conflicting evidence with respect to a particular issue raised by the motion for a directed verdict and the only concern is the legal significance of undisputed facts, then an appellate court may make an independent determination of the issue); see also Thyssenkrupp Safway, Inc., 271 P.3d at 590 (directed verdict should only be granted when there is no evidence a reasonable juror could use to find against the moving party).
¶ 64 Plaintiffs' second amended complaint did not identify specific conduct giving rise to the section 1983 claim, but in the TMO they rely on separate instances of discrimination to support the section 1988 claim,. Neither the language of C.R.C.P. 50 nor the limited authority on the subject precludes what the trial court did here-refuse to give a jury instruction on a theory for which no evidence was presented and grant a partial directed *725 verdict as to some of the instances of discriminatory conduct alleged to support plaintiffs' section 1988 claim. Price-Cornelison, 524 F.3d at 1111 (separately analyzing two instances of police refusing to enforce a protective order when the complaining individual was in a lesbian relationship with the woman who allegedly violated the protective order); LRL Properties, 55 F.3d at 1106 (declining to apply the longer statute of limitations under a' "continuing violation" theory where the facts pled constituted a series of discrete and separate acts that were separate incidents of discrimination); Hamilton, 579 S.E.2d at 59 (affirming trial court's grant of plaintiff's motion for directed verdiet on the issue of comparative negligence, finding no evidence of plaintiff's negligence); Hammond, 2006 WL 22718309, at *2 ("We agree with plaintiffs that there was no question of material fact that defendant negligently installed the posts and chain within the public right-of-way, rather than on its own property, Therefore, the trial court erred in denying plaintiffs' motion for a partial directed verdiet on that limited issue."); In re Commitment of Scott, 2012 WL 5289333, at *2 ("Although [the directed verdict rule] does not expressly contemplate a partial directed verdict, the trial court may grant a partial directed verdict to remove a certain portion of a case from the factfin-der."). I see no justification for limiting C.R.C.P. 50 as plamtlffs request and as the majority accepts.
¶ 65 In my view, a party should not be allowed to manipulate a trial court's duties simply by pleading multiple acts of misconduct within a single claim rather than pleading those acts of misconduct as separate claims.
II. Jury Instructions
¶ 66 Because the majority remanded plaintiffs' section 1988 claim for trial, the majority did not reach plaintiffs' claim that the trial court érred in submitting two instructions to the jury pertinent to their section 1983 claim. Because I conclude that plaintiffs failed to present evidence supporting their proposed jury instructions, I would reach the jury instructions issue and hold that the trial court did not err in its instructions to the jury.
A. Standard of Review
¶ 67 We review a trial court's decision to give a particular jury instruction for an abuse of- discretion. Day v. Johnson, 255 P.3d 1064, 1067 (Colo.2011). "A trial court's ruling on jury instructions is an abuse of discretion only when the ruling is manifestly arbitrary, unreasonable, or unfair." Id.
B. Instruc‘mon 3
¶ 68 Plamtlffs argue that Instruction 8 was improper because it instructed the jury to consider 'only Summit County's conduct regarding its bond requirement for septic system repairs and did not instruct the jury to consider Summit County's other actions related to its requirement of septic system repairs, wetlands mitigation, or the bond requirement for wetlands mitigation.[7]
¶ 69 Plaintiffs contend that the jury should have been instructed to evaluate all of Summit County's actions toward them during the construction process to determine if Summit County discriminated against them and violated their rights to equal protection. The trial court did not limit plaintiffs' presenta *726 tion of evidence, did not limit their argument to the jury, and even instructed the jury about plaintiffs' theory, as plaintiffs requested, as follows:
Plaintiffs claim the County ... treated them in a discriminatory manner throughout construction of the home, and that the disalﬁmination was due to their sexual orientation. - Plaintiffs claim the County imposed requirements upon them as conditions of obtaining a Certificate of Oceu-pancey for their Property, which were not required of other Submit County homeowners. - Plaintiffs believe the County's decisions, taken as a whole, collectively establish that the County treated them in a discriminatory manner.
¶70 The trial court found, and I agree, that in three of the four challenged acts-the septic system requirements, the wetlands mitigation requirement, and the wetlands mitigation bond-plaintiffs did not present evidence of similarly situated comparators who were treated differently.
T71 Plaintiffs' only theory of lability under section 1988 for which they presented evidence, without limitation by the court, during trial was whether Summit County discriminated against them when it required a bond for the septic system repairs. I thus conclude that the trial court did not err in limiting the jury instruction to reflect the evidence presented and the elements of a section 1983 claim. See Hansen v. State Farm Mut. Auto. Ins. Co., 957 P.2d 1380 (Colo.1998) (a party is "entitled to an instruction embodying his or her theory of the case if it is supported by competent evidence"); Regents of Univ. of Colorado v. Harbert Constr. Co., 51 P.3d 1037, 1043 (Colo.App.:-2001) ("A trial judge is required to instruct the jury on the law applicable to the case, and a party is entitled to an instruction on its theory of the case if the evidence supports it.").
¶ 72 Plaintiffs also assert that Instruc’mon 8 should have directed the jury to evaluate whether the amount of the bond and the bond requirement itself were within the county septic system regulations. I conclude that it was proper for the trial court not to direct the jury to consider whether Summit County was acting consistently with its regulations because that is not an element of a section 1983 claim. See SECSYS, LLC v. Vigil, 666 F.3d 678, 685 (10th Cir.2012) (holding that an equal protection inquiry requires asking first whether the challenged state action intentionally discriminates between groups of persons and, if so, whether the decision to discriminate serves a legitimate government purpose).
C. Instruction 10
¶ 73 Instruction 10 stated: "Unless outweighed by evidence to the contrary, you may find that official duty has been properly and regularly performed." Plaintiffs next contend that Instruction 10 was improper because it would only be relevant in quasi-judicial administrative proceedings as an exception to the "mental process rule," which prohibits inquiries into the mental processes of agency employees. Plaintiffs also contend that Instruction 10 "suggests to the jury that if Plaintiffs present evidence of a discriminatory motive for [Summit County's] conduct and [Summit County] presents evidence of a non-disceriminatory reason for the decision, the jury should always presume that the conduct was based on the nondiscriminatory reason."
¶ 74 I conclude that Instruction 10 was properly given. [8]A (presumption of [validity and] regularity supports the official acts of public officials and in absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties" Jensen v. City & County of Denver, 806 P.2d 381, 386 (Colo.1991) (quoting United States v. Chemical Found., 272 U.S. 1, 14-15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)); see also Crested Butte S. Metro, Dist, v. Hoffman, 790 P.2d 327, 329 (Colo.1990).
¶75 Plaintiffs' argument that this presumption applies only to quasi-judicial administrative hearings as an exception to the mental process rule lacks merit. They cite no cases, and I have found none, that so limit the use of the presumption.
*727 ¶76 I also disagree with plaintiffs' assertion that Instruction 10 required the jury to presume that any discriminatory act committed by Summit County employees was within the scope of their official duties. Instruction 10 clearly began with an important qualifier: "Unless outweighed by evidence to the contrary,..." Thus, Instruction 10, combined with Instruction 8, instructed the jury that if plaintiffs presented evidence of intentional discriminatory acts, it should no longer presume the acts were within. the government actor's official duties Seq, e.g., Rogers v. Westerman Farm Co., 29 P.3d 887, 909 (Colo. 2001) ("Under Colorado law, all of the trial court's instructions are to be considered as a whole when determining whether the necessary law has been properly stated to the Jury.").
¶77 For these reasons I respectfully dissent, I would affirm all of the trial court's challenged orders.

. The court instructed the jury:; "[(Whern] comparing the Board's relative treatment of Plaintiffs to other 'similarly situated' applicants for a certificate of occupancy, the phrase 'similarly situated' does not mean that Plaintiffs and the other applicants must be in identical circumstances. Rather, the circumstances need only be similar in material, or important, ways."

. Instruction 3 stated:
In order to prevail on their equal protection claim, Plaintiffs must prove, by a preponderance of the evidence, that in response to Plaintiffs' efforts to obtain a certificate of occupancy for their property:
1. One or more County employees, in making the decision to condition the Plaintiffs' receipt of a certificate of occupancy on their payment of a bond to cover the costs associated with the repairs to their septic system, treated the Plaintiffs more harshly than others who were not a same-sex couple but were otherwise similarly situated to Plaintiffs;
2. The County employee's or employees' different treatment of Plaintiffs with respect to the foregoing decisions was based on intentional discrimination based on their sexual orientation;
3. The County employee or employees committed such acts under the color of state law or authority; and
4. Plaintiffs' sexual orientation was a motivating factor for the County employee's or employees' different; treatment of the Plaintiffs.

. Summit County argues that plaintiffs' contention that Instruction 10 is only appropriate for quasi-judicial proceedings was not properly preserved because they objected to the instruction for a different reason at trial. Because I find that the instruction was proper, I need not decide if the contention was properly preserved.