**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 27, 2023

# In the Court of Appeals of Georgia

A23A0104. WANG et al. v. DUKES et al.

DOYLE, Presiding Judge.

Mei R. Wang, individually and as personal representative of the Estate of Karen Yun ("Wang"), sued Roderick Dukes and J. B. Hunt Transport, Inc., ("the defendants") for the wrongful death of Yun following a December 29, 2015 traffic accident. The defendants moved for summary judgment and to strike an expert affidavit. After a hearing, the trial court granted the defendants' motions. Wang appeals, arguing that the trial court erred by striking the affidavit and by granting summary judgment to the defendants. For the reasons that follow, we reverse in part and affirm in part.

On appeal, we review the trial court's grant of summary judgment to determine whether the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law. . . . [T]his court conducts a de novo review of the law and the evidence. In addition, we give the nonmoving party the benefit of all reasonable doubt, and the evidence and all inferences and conclusions therefrom must be construed most favorably toward the nonmoving party. We do not resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution.[1]

Viewed in this light, the record shows that east of Rincon, Georgia, Old Augusta Road runs approximately north to south and Fort Howard Road runs approximately east to west, dead-ending at its east end into Old Augusta Road. Both roads have a single lane of travel in each direction. At the time of the accident, the intersection of Old Augusta Road and Fort Howard Road consisted only of a stop sign facing east-bound Fort Howard Road travelers who would be turning onto Old Augusta Road and no traffic control in other directions. Southbound travelers on Old Alabama Road could continue straight or enter a right-hand turn-lane to enter the westbound lane of Fort Howard Road. Northbound travelers on Old Augusta Road could continue straight or enter a left-turn lane to continue west on Fort Howard Road. Because of the left turn-lane of traffic facing north on Old Augusta, the

---

[1] (Citations and punctuation omitted.) *Tookes v. Murray*, 297 Ga. App. 765, 765-766 (678 SE2d 209) (2009).

2

southbound lane and northbound lane of travel just north of Fort Howard were separated by an area of roadway in which no traffic on Old Augusta was traveling — a median or gore north of the left-turn lane used to enter the westbound lane of Fort Howard Road. Based on the photographs of the area, the gore is at least the width of a normal lane of traffic.

According to the accident report, Yun, who was 17 years old at the time of the accident, was driving a minivan east on Fort Howard Road on a well lit day. Multiple witnesses gave reports after the accident at issue, and there were different accounts as to whether Yun stopped completely at the stop sign before pulling straight out onto Old Augusta Road. One driver who was behind Yun stated, "I was stopped behind [Yun's] van [at the] stop sign on Fort Howard [and] Old Augusta Rd. She pulled out[,] [seeming] to be turning left onto Old Augusta R[oad] when the semi crashed into her. The semi did not have time to stop. I parked my car and ran with other witnesses to check on the lady in the van." Other witnesses said Yun did not stop, failed to see or acknowledge the tractor trailer, or rolled through the stop sign.

Dukes, who was operating a tractor-trailer truck southbound on Old Augusta Road, saw Yun pull out from the stop sign, and he immediately applied his brakes "approximately 140 feet and 5 inches" prior to the point of impact according to the

3

police investigation. Dukes deposed that the accident happened so quickly that he had no time to avoid it, and he just "hit the brakes, counter-steer[ed], and [blew] the horn." According to the police report, Yun's vehicle had traveled 40 feet 5 inches from the stop bar at the time the truck impacted the driver's side of her vehicle. The report noted that the southbound lane of Old Augusta Road was 12 feet 10 inches wide.

According to the results of the police investigation, the front of Dukes's tractor-trailer truck impacted the drivers' side of Yun's van in the middle of the median or gore area. In order for the impact to occur at that location, Dukes had to leave his southbound lane of travel and enter the gore traveling toward the northbound lane of travel on Old Alabama Road. Indeed, Dukes stated to police and at his deposition that he "steered left" when he saw Yun pull out, though he acknowledged that she had to be turning left because she went straight across Old Alabama instead of turning right. In his deposition, however, Dukes disagreed with the results of the investigation, stating that he believed the impact occurred in his southbound lane of travel, but he agreed that the vehicles ended up in the positions marked by police.

The defendants moved for summary judgment, claiming that Wang could not show that Dukes was negligent or caused the accident because instead, Yun had negligently pulled out in front of Dukes. In response to the motion, Wang filed the affidavit of Herman Hill, a professional engineer, who opined that Dukes negligently steered to the left and into the gore area, which Yun had previously entered and was rightfully in, causing the accident. Hill stated that in forming this opinion, he had relied on his experience and "facts and data of the type usually relied upon by experts in the field of civil engineering, highway design, construction and maintenance, and traffic engineering. . . ." Hill also stated that in preparing his opinion and affidavit that he had

> (a) [r]eviewed the Georgia Motor Vehicle Crash Report regarding the December 29, 2015, collision; (b) [r]eviewed available photographs and videotape concerning the . . . wreck scene and the vehicles involved in that crash; (c) [m]ade vehicle inspection of the 2010 Freightliner Cascadia tractor unit at J D Hunt facility in Forest Park, G[eorgia,]on February 12, 2016; (d) [m]ade site inspection of the intersection in Effingham County where the Yun crash occurred on January 13, 2016, recorded 107 photographs; (e) [m]ade vehicle inspection of the 2003 Toyota Sienna at Smithey's Wrecker Service in Rincon, Georgia[,] on January 14, 2016; (f) [r]eviewed, among other things, the Manual on Uniform Traffic Control Devices, Federal Highway Administration; AASHTO Roadside Design Guide and other applicable literature,

5

standards, and industry publications; (g) [r]eviewed the Complaint filed; (h) [r]eviewed other documents and publications relating to highway, construction, maintenance, and traffic operations.

The defendants moved to strike Hill's affidavit, contending that it contained legal conclusions and did not explain the principles he used or how he applied them in coming to his conclusions.

Following a hearing, the trial court entered an order granting the defendants' motion to strike the affidavit and motion for summary judgment.

1. Wang argues that the trial court erred by granting summary judgment to the defendants. We agree.

To prove negligence, a plaintiff must establish four elements: duty, breach of that duty, causation, and damages.[2] "Negligence is not susceptible to summary adjudication except where the evidence is plain, palpable, and indisputable that the respondent cannot present any slight evidence on each essential element of the action in rebuttal to create a jury issue."[3] "Questions of negligence, diligence, contributory

---

[2] See *Goldstein, Garber & Salama, LLC v. J. B.*, 300 Ga. 840, 841 (1) (797 SE2d 87) (2017).

[3] (Citation and punctuation omitted.) *Hite v. Anderson*, 284 Ga. App. 156, 159 (643 SE2d 550) (2007), citing *Robinson v. Kroger Co.*, 268 Ga. 735, 745-748 (2) 493 SE2d 403 (1997).

6

negligence and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases."[4]

Even without Hill's expert affidavit, the remainder of the record plainly shows the existence of questions of fact as to whether Dukes left his lane of travel before impacting Yun's vehicle, and if he did enter the median before the impact, whether he was negligent in leaving his lane of travel,[5] swerving left if he knew that Yun was heading in that same direction (as well as possibly into any northbound drivers), and failing to maintain his own lane of travel.[6] It is true that the jury may conclude that Yun's act of leaving Fort Howard Road and crossing into Dukes's path was the sole cause of the accident, but it does not follow that summary judgment is required as a matter of law because the physical evidence does not show that the accident occurred in Dukes's lane of travel.

---

[4] *Hart v. Phung*, 364 Ga. App. 399, 406-407 (2) (876 SE2d 1) (2022), quoting *Spires v. Thomas*, 362 Ga. App. 344, 349 (2) (866 SE2d 856) (2021).

[5] See, e.g., *Latargia v. Toole*, 196 Ga. App. 692 (396 SE2d 607) (1990) (jury trial to determine which driver was at fault for accident occurring in the center turn lane of a five-lane highway).

[6] See *Hart*, 364 Ga. App. at 406-407 (2); *Hite*, 284 Ga. App. at 158-159.

Relying on *Kicklighter v. Jones*,[7] the defendants argue that "[a] driver having the right of way at an intersection has the right to assume that others will obey the rule of the road and will yield the right of way to him, and he has the right to proceed at a reasonable speed even though he sees another vehicle approaching." Nevertheless, "even if [a] driver . . . is guilty of negligence per se or has otherwise failed to exercise ordinary care in approaching [an] intersection, this will not relieve the driver having the right of way of his own legal duty to exercise ordinary care under the facts and circumstances of the situation."[8]

Here, there is some non-speculative evidence from which the jury could conclude that had Dukes continued in his lane of travel, Yun would have crossed in

---

[7] (Citations and punctuation omitted.) 202 Ga. App. 654 (415 SE2d 302) (1992). We agree that Yun had a stop sign and therefore should have completely stopped her vehicle and yielded to oncoming traffic; however, the witness statements as to whether she completely stopped are mixed, and every driver in such a situation is going to be required to make a decision as to whether they can safely cross based on the distant and speed of the oncoming drivers because it is unlikely that such an intersection will ever be completely free of oncoming traffic. Moreover, a violation of a statute does not require a grant of summary judgment if there is a question of fact. See *Hite*, 284 Ga. App. at 158 ("[N]egligence per se is not liability per se.").

[8] *Currey v. Claxton*, 123 Ga. App. 681, 682 (1) (182 SE2d 136) (1971).

front of him without incident.[9] We have brake marks, pictures of the scene, witness statements, measurements of Yun's distance of travel prior to the impact, Dukes's approximate speed of travel prior to braking, and the trajectory of the vehicles and site of the impact based on the accident report made by the police at the scene. The defendants have not cited any proposition of law upon which summary judgment is demanded, and the trial court erred by granting summary judgment to the defendants rather than allowing the case to proceed to trial because material questions of fact exist in the record.[10] Accordingly, the grant of summary judgment is reversed.

2. Wang also argues in several enumerations that the trial court erred by striking Hill's expert affidavit. We disagree.

Pursuant to OCGA § 24-7-702 (b)

---

[9] Compare *Tallman Pools of Ga. v. James*, 181 Ga. App. 341 (352 SE2d 179) (1986) (physical precedent only), which was cited by the defendants and which held that there was no genuine issue of fact as to whether a driver who braked but could not avoid a collision in his own lane of travel with another vehicle that swerved into his lane. See id. at 342. In the case before us, however, there is some evidence to support a finding that Dukes left his lane of travel and entered into the center median area where he impacted Yun's vehicle. Therefore, *James*, in addition to not being binding precedent, is inapposite to our facts.

[10] See, e.g., *Hart*, 364 Ga. App. at 407 (2); *Hite*, 284 Ga. App. at 158-159; *Gibson v. Carter*, 248 Ga. App. 280, 282-283 (2) (545 SE2d 698) (2001); *Currey*, 123 Ga. App. at 682 (1).

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if: (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) The testimony is based upon sufficient facts or data; (3) The testimony is the product of reliable principles and methods; and (4) The expert has reliably applied the principles and methods to the facts of the case.

We review a trial court's grant or denial of a motion to strike an expert affidavit for manifest abuse of discretion.[11]

In striking the affidavit, the trial court concluded the following:

As to the Affidavit of [Hill], the [c]ourt finds that the Affidavit does not provide a basis for Hill's opinion that [Dukes] caused the collision by steering left. Hill's statements in his Affidavit are legal conclusions, not facts, that go the ultimate issues in this case. In addition, there is no evidence that Hill applied any of the methodologies he refers to in his Affidavit to the specific facts in this case. The Affidavit is fraught with legal conclusions that are not supported by any explanation of what methodologies were used to support those conclusions or how Hill arrived at his conclusions. Merely asserting that methodologies, manuals, etc.[,] were used but not explaining how they were used to reach conclusions is not sufficient.

---

[11] See *Udoinyion v. Michelin North America, Inc.*, 313 Ga. App. 248, 251 (1) (721 SE2d 190) (2011).

We discern no abuse of discretion in the trial court's findings.[12] Although it is clear from the affidavit that it was based upon Hill's review of all the same information in the record that we have summarized above, and even though he listed the treatises and documents that he may have utilized, he failed to include the logic behind or specific traffic rules that supported his conclusions.[13] That said, the record does not present a basis for reversal of the trial court's order striking the expert affidavit.

*Judgment affirmed in part and reversed in part. Gobeil, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[12] See id. ("The[ expert] affidavits did not describe the facts or data upon which their opinions were based, aside from visual inspections of the tire; the affidavits did not explain the principles or methods they used to reach their conclusions about the tire; and the affidavits did not provide support for a conclusion that [the experts] had applied those principles and methods reliably in their inspections of the tire in this case."). See also *McGuire Holdings v. TSQ Partners*, 290 Ga. App. 595, 597-599 (1) (b) (660 SE2d 397) (2008).

[13] The defendants take greatest issue with Hill's conclusion that Yun had a legal right to be in the median area and that Dukes did not. Obviously, someone turning left will have to traverse the median, and someone traveling southbound does not have legal right to travel into the median. An expert is not necessary to understand these concepts.